UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:20-cv-24478-DAMIAN

ALBERTO SALMON PECORA, and all
others similarly situated under 29 U.S.C.
216(b),

    Plaintiff,

v.

PRIME SECURITY ALLIANCE INC.,
ANAILY GONZALEZ and RUBEN
ARVELIO BORRERO

    Defendants.

_____/

## ORDER ON JOINT MOTION FOR ENTRY OF CONSENT JUDGMENT AGAINST DEFENDANTS JOINTLY AND SEVERALLY [ECF NO. 65]

THIS CAUSE is before the Court on Plaintiff, Alberto Salmon Pecora's ("Plaintiff" or "Pecora"), and Defendants, Prime Security Alliance Inc., Anaily Gonzalez, and Ruben Arvelio Borrero's (collectively, "Defendants"), Joint Motion for Entry of Consent Judgment Against Defendants Jointly and Severally, filed September 21, 2022 ("Motion"). [ECF No. 65]. This matter is before the undersigned pursuant to a Joint Notice of Consent to Jurisdiction by United States Magistrate Judge, in which the parties jointly and voluntarily elected to have the undersigned conduct all further proceedings in this case. [ECF No. 59].

THE COURT has considered the Motion, the Consent Judgment [ECF No. 63], the pertinent portions of the record, and the relevant legal authorities and is otherwise fully advised in the premises. The Court also heard from the parties, who appeared, through counsel, on September 8, 2022 (by Zoom) and October 19, 2022. As set forth below, the

Motion is approved, the Consent Judgment is entered, and the case is dismissed with prejudice.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On October 6, 2020, Pecora filed a two-count Complaint against Defendants in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, for unpaid overtime and minimum wages. *See* ECF No. 1-1 ("Complaint"). Defendants then removed the action to this Court on October 30, 2020. [ECF No. 1]. According to the allegations in the Complaint, Defendants employed Pecora as a security guard from January 5, 2019, to September 26, 2020. Compl. at ¶ 13. Pecora alleges that during his employment he worked an average of 72 hours per week and was paid a weekly salary of $350 — an average hourly rate of $4.86, a rate that does not meet the applicable minimum wage rate of $7.25/hour for that period. *Id*. at ¶¶ 18, 21. Pecora further alleges that Defendants willfully and intentionally refused to pay him the applicable minimum wage and overtime wages as required by the FLSA, knew of the minimum wage and overtime requirements of the FLSA, and recklessly failed to investigate whether their payroll practices were in accordance with the FLSA. *Id*. at ¶ 19, 23. Therefore, in the Complaint, Pecora seeks his alleged unpaid minimum and overtime wages, as well as liquidated damages and reasonable attorney's fees and costs from Defendants. *See id*.

On April 30, 2021, Pecora filed a Motion for Partial Summary Judgment. [ECF No. 23]. Defendants filed their Response in Opposition on May 14, 2021. [ECF No. 38]. On June 9, 2022, the Court entered an Order granting the Motion for Partial Summary Judgment in part, finding as a matter of law that Defendants waived their right to contend

that FLSA coverage exists, and denied the Motion in part because a genuine dispute of material fact exists as to whether Pecora was Defendants' employee. [ECF No. 45 at 11].

Since the filing of the Complaint, the parties participated in mediation two separate times, neither of which resulted in a settlement. The parties ultimately reached an agreement outside of mediation.

On September 8, 2022, the parties appeared, through counsel, for a status conference and informed the Court that the parties had resolved the claims in the Complaint and entered into a stipulated Consent Judgment. On September 9, 2022, pursuant to the Court's request, the parties submitted their Stipulated Consent Judgment ("Consent Judgment") for the Court's review. [ECF No. 63]. In the Consent Judgment, the parties stipulate and consent to the entry of judgment in favor of Plaintiff and dismissal of the action with prejudice. *Id*. Thereafter, the Court directed the parties to file a Joint Motion for Approval of the Stipulated Consent Judgment. [ECF No. 64]. On September 21, 2022, the parties submitted the Motion now before the Court seeking entry of the Consent Judgment. [ECF No. 65]. The parties then appeared before the Court, through counsel, on October 19, 2022, for a hearing regarding the terms of the Consent Judgment.

## II. APPLICABLE LEGAL STANDARDS

Section 206 of the FLSA establishes the federally mandated minimum hourly wage, and Section 207 prescribes overtime compensation of "one and one-half times the regular rate" for each hour worked in excess of forty hours during a given workweek. 29 U.S.C. §§ 206, 207. An employer who knowingly and willfully violates the FLSA is liable to its employee for any unpaid minimum and/or overtime wages, as well as an equal amount in liquidated damages. 29 U.S.C. § 216(b). The provisions of the FLSA are mandatory and "cannot be abridged by contract or otherwise waived" between employers and employees.

*Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981). Nevertheless, there are two ways in which claims arising under the FLSA can be settled or compromised by employees: (1) if the payment of unpaid minimum wage/overtime pay is supervised by the Secretary of Labor; or (2) in a private lawsuit brought by an employee against his or her employer, if the parties present the district court with a proposed settlement agreement and the district court enters a stipulated judgment after scrutinizing the settlement for fairness. *See* 29 U.S.C. 216(c); *Lynn's*, 679 F.2d at 1352–53.

The Eleventh Circuit has held that the compromise of FLSA claims is allowed under the following circumstances:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Lynn's*, 679 F.2d at 1354. Thus, an employee may compromise a claim if the district court determines that the compromise "is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* at 1355.

When evaluating an FLSA settlement, the district court considers both whether the settlement is fair and reasonable to the employee (*i.e.*, "internal" factors), and whether the settlement frustrates the purpose of the FLSA (*i.e.*, "external" factors). Factors considered "internal" include: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings

and the amount of discovery completed; (4) the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel. *Leverso v. SouthTrust Bank of Ala., Nat'l Ass'n*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994); *see also Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241–44 (M.D. Fla. 2010). There is a "'strong presumption' in favor of finding a settlement fair." *Walker v. Kirkman Mgmt., LLC*, No. 20-1149, 2022 WL 1037369, at * 2 (M.D. Fla. Mar. 18, 2022) (quoting *Cotton v. Hinton*, 559 F.2d 1336, 1331 (5th Cir. 1977)). Additionally, the "FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009).

## III. DISCUSSION

With the foregoing in mind, the Court turns to scrutinize the Consent Judgment entered by the parties in the instant case for fairness.

### a. *The Judgment Amount*

Both parties are represented by counsel and agreed to entry of the Consent Judgment to avoid continued costs and the uncertainty of litigation. Mot. at 1. In the Consent Judgment, Defendants jointly and severally consent to the entry of a final judgment in favor of Pecora in the amount of $175,000.[1] Consent Judgment at ¶ 1. However, the Consent Judgment stipulates that if Defendants pay $150,000 to Pecora and his counsel by October 31, 2023, the judgment will be satisfied.

---

[1] Although the Consent Judgment incorrectly states that the parties consent to the entry of a final judgment in favor of Pecora and J.H. Zidell, P.A., (Consent Judgment at ¶ 1), judgment will be entered in favor of only Pecora, as his attorney is not a party to this action. The judgment amount will be apportioned between Pecora's wage-based compensatory damages and his attorney's fees and costs as detailed in this Order.

Pursuant to the Consent Judgment, of the $150,000 settlement amount, $29,000 shall be allocated to Pecora as wage-based compensatory damages. Mot. at 2. If the Consent Judgment is not satisfied by October 31, 2023, Pecora will receive a pro-rata share of the additional $25,000, an additional $6,250, for his wage-based compensatory damages. Mot. at 3, n.3.

The Court did not require Pecora to submit a Statement of Claim, nonetheless, he provided the Court with a detailed breakdown of his minimum wage and overtime wage claims as an exhibit to the Motion. *See* Ex. A to the Motion. In the breakdown of his claims, Pecora asserts that he is owed a total of $35,400.16 for alleged unpaid wages and liquidated damages such that the amount he will receive pursuant to the Consent Judgment is approximately eighty-two percent (82%) of the total damages sought in the lawsuit. Mot. at 2.

The Court has scrutinized the terms of the Consent Judgment and considered the above referenced factors. Based on the parties' representations and their expressed concerns regarding the alleged FLSA claims, the Court finds the Consent Judgment amount represents a fair and reasonable resolution of a bona fide dispute between the parties under all the circumstances presented and that Pecora has not unfairly compromised his FLSA claims. The Court also finds the Consent Judgment promotes the policy of encouraging settlement of litigation of FLSA claims. *Lynn's*, 679 F.2d at 1354.

Having found the judgment amount is fair and reasonable, the Court addresses the specific terms of the Consent Judgment.

### b. *Terms of Payment*

The Consent Judgment further provides that if Defendants pay $150,000 to the Client Trust Account of Pecora's attorney, J.H. Zidell P.A., by October 31, 2023, the

judgment will be satisfied, provided that Defendants pay at least $1,500 monthly by the first day of each month to the Client Trust Account, beginning on October 1, 2022, (*id*. at ¶ 2), as well as a balloon payment of the full remaining balance of the $150,000 by October 31, 2023. If payment is not timely made, the Consent Judgment requires Pecora's counsel to serve an email titled "Notice of Default" to counsel for Defendants. *Id*. After receiving the default email, Defendants will have three business days to cure. *Id*. If Defendants fail to cure, Pecora will be entitled to commence collections against Defendants for the full judgment amount of $175,000, minus any amounts already made. *Id*. The Consent Judgment also provides that Defendants will deliver 13 post-dated checks to Plaintiff's counsel in the amount of $1,500 each, dated on the first of the month for each month from October 2022 to October 2023. *Id*.

The Court has scrutinized the terms of payment and finds that they do not undermine Pecora's FLSA claims or the fairness of the Consent Judgment.

### c. *Attorneys' Fees*

In an FLSA action, the court "shall . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). As part of the Consent Judgment, separate and apart from the amount paid to Pecora, Defendants will pay Pecora's counsel $113,468.20 in attorney's fees and $6,531.80 in costs, provided that the Consent Judgment is satisfied before October 31, 2023. *Id*. at 3-4. If the Consent Judgment is not satisfied by October 31, 2023, Pecora's counsel will receive an additional $18,750 in attorney's fees and costs, reflecting counsel's pro-rata share of the additional $25,000. *See id*. The Motion states that this amount was negotiated separately from the amount paid to Pecora for his FLSA claims. *Id*. at 3.

7

The Motion also states that the amount in attorney's fees and costs reflects the extensive amount of work performed by Pecora's counsel, which includes participating in eight depositions, multiple hearings and mediations, and extensive discovery and motion practice, including the filing of a motion for summary judgment. *Id.* at 3. Based on the parties' representation that Pecora's attorney's fee was agreed upon separately from the settlement amount paid to Pecora and finding the Consent Judgment is otherwise reasonable on its face, the Court finds that Pecora's recovery was not adversely affected by the amount of fees paid to his attorney. Therefore, the Court may approve the Consent Judgment without separately considering the reasonableness of the fee to be paid to Pecora's counsel. *See Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009). Even so, the Court finds the fees to be paid to Pecora's counsel are reasonable under the circumstances presented. The Court may rely on its own experience in determining reasonableness of fees and does so here. *See Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) ("The court, either trial or appellate, is itself an expert on the question [of reasonable hourly rates and hours expended] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940))).

Accordingly, the Court finds the fees to be paid to Pecora's counsel pursuant to the Consent Judgment are reasonable and have not adversely affected the amounts paid to Pecora. The Court also finds the amount of costs to be paid is reasonable.

### d. *General Mutual Release*

The Consent Judgment provides that the parties agree to execute mutual general releases of all claims the parties may have against each other within twenty days of the submission of the Consent Judgment. Consent Judgment at ¶ 5.

General releases in FLSA cases are frequently viewed as "a 'side deal' in which the employer extracts a gratuitous (although usually valueless) release of all claims in exchange for money unconditionally owed to the employee" and, therefore, such releases "confer an uncompensated, unevaluated, and unfair benefit on the employer." *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1351–52 (M.D. Fla. 2010) (footnote omitted). As such, "[a] compromise of an FLSA claim that contains a pervasive release of unknown claims fails judicial scrutiny." *Id.* at 1352; *see also Bradford v. Ancient City Grp. LLC*, No. 21-513, 2022 WL 549589, at *3 n.2 (M.D. Fla. Feb. 15, 2022) ("Some judges will not approve an agreement to settle a FLSA claim that includes a general release because, without an indication of the value of the released claims, the fairness and reasonableness of the compromise cannot be determined."); *King v. Premier Fire Alarms & Integration Sys., Installation Div., Inc.*, No. 20-60064, 2021 WL 7540777, at *1 (S.D. Fla. Dec. 17, 2021) (denying without prejudice joint motion to approve FLSA settlement where "the Agreement contains unbounded and pervasive release provisions" requiring the plaintiff to "release many known and unknown legal claims that have nothing apparent to do with the current FLSA dispute"). Nevertheless, "if a plaintiff is given compensation in addition to that to which he or she is entitled under the FLSA, then general releases can be permissible." *Herrera v. FS Invs. of America, Inc.*, No. 20-2465, 2021 WL 1602120, at *2 (M.D. Fla. Apr. 8, 2021).

In the Motion, the parties represent that Defendants are paying Pecora an additional $1,000 as consideration for the mutual general releases, mutual confidentiality provision,

and other non-monetary provisions of the Consent Judgment. Mot. at 3. The parties represent that although Pecora is not presently aware of any other potential claims against Defendants, the inclusion of the general release was an important element for Defendants in the negotiation process. *Id*. Based on the foregoing, the Court finds that the general releases do not undermine the fairness of the Consent Judgment.

### e.  *Confidentiality And Non-Disparagement*

The Consent Judgment also provides that the forthcoming general releases will contain mutual confidentiality and non-disparagement provisions. Consent Judgment at ¶ 5.

Confidentiality provisions in FLSA settlement agreements are often rejected by district courts because courts consider them to "thwart Congress's intent to ensure widespread compliance with the FLSA." *Herrera*, 2021 WL 1602120, at *2 (citing cases). Moreover, "[j]udicial records are presumed to be public documents because '[o]nce a matter is brought before a court for resolution, it is no longer solely the parties' case, but also the public's case.'" *Smith v. Target Corp.*, No. 21-80307-CIV, 2021 WL 5366876, at *1 (S.D. Fla. Nov. 18, 2021) (quoting *Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013, 1016 (11th Cir. 1992)). Therefore, a confidentiality provision in an FLSA settlement agreement "both contravenes the legislative purpose of the FLSA and undermines the Department of Labor's regulatory effort to notify employees of their FLSA right." *Mingo v. Ironclad Projects, LLC*, No. 19-CIV-62202, 2021 WL 8894997 at *4 (S.D. Fla. Mar. 1, 2021) (quoting *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1242 (M.D. Fla. 2010)). Similarly, courts that have analyzed the issue of non-disparagement clauses in FLSA settlement agreements have also generally rejected them. *Dees v. Hydrady, Inc.*, No. 8:09–cv–1405–T–23TBM, 706 F. Supp. 2d 1227, 1242–43 (M.D. Fla. 2010); *Stalnaker v. Novar Corp.*, 293 F. Supp. 2d 1260 (M.D. Ala. 2003); *Hanson v. Wells Fargo Bank, N.A.*, No. 08–80182–Civ, 2009 WL 1490582 (S. D.

Fla. May 26, 2009). However, a number of cases have approved FLSA settlements in which the employee received additional consideration in exchange for non-cash concessions that went beyond the release of the FLSA claims. *DeGraff v. SMA Behavioral Health Serv., Inc.*, 945 F. Supp. 2d 1324, 1329–30 (M.D. Fla. 2013); *Caamal v. Shelter Mortgage Co., LLC*, No. 6:13–cv–706–Orl–36KRS, 2013 WL 5421955, *4 (M.D. Fla. Sept. 26, 2013).

As discussed above, the parties represent that Defendants are paying Pecora an additional $1,000 as consideration for the mutual general releases, mutual confidentiality provision, and other non-monetary provisions of the Consent Judgment. Mot. at 3. Moreover, the Court notes that the parties did file the Consent Judgment in the public record, which alleviates concerns regarding public interests. Accordingly, the Court finds the inclusion of the confidentiality and non-disparagement provisions do not undermine the fairness of the Consent Judgment under the circumstances presented.

### f. Retention of Jurisdiction

Finally, the parties request the Court reserve jurisdiction to enforce the terms of the Consent Judgment. "To retain jurisdiction to enforce a settlement agreement, the court itself must act; agreement by the parties is not enough." *Anago Franchising, Inc. v. Shaz*, LLC, 677 F.3d 1272, 1279 (11th Cir. 2012). Noting that the parties filed the Consent Judgment in the Court's docket, the Court finds the request to reserve jurisdiction to enforce the terms of the Consent Judgment is reasonable.

## IV.  FINDINGS

The Court has considered the factors outlined in *Lynn's Food Stores*; the factual positions of the parties; the existence (or lack thereof) of documents supporting or corroborating the parties' positions; the strengths and weaknesses in the parties' respective positions; and the parties' desires to resolve their disputes without protracted litigation.

As set forth above, the Court finds that the Consent Judgment represents a genuine compromise of a bona fide dispute. Defendants, who deny liability, have agreed to pay Pecora more than they believe he is due under the law. The parties have agreed to settle because of reasonable strategic and financial considerations.

The Court also finds that the settlement occurred in an adversarial context and that there are genuine coverage and computation issues in dispute. The Court further finds that the Consent Judgment reached by the parties represents a reasonable compromise by both sides and is fair and reasonable and that the amount claimed as payment for Pecora's counsel's fees and costs is also reasonable.

## V. CONCLUSION

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** that the Joint Motion for Entry of Consent Judgment Against Defendants Jointly and Severally [ECF No. 65] is **GRANTED**. The Court finds the parties' Stipulated Consent Judgment [ECF No. 63] is fair and reasonable to Plaintiff and does not frustrate the purpose of the FLSA. Pursuant to Federal Rule of Civil Procedure 54, the Consent Judgment is hereby **APPROVED AND ENTERED**, and this action **DISMISSED WITH PREJUDICE**. Each party shall bear his or its own fees and costs except as provided in the Consent Judgment.

The Court shall retain jurisdiction to enforce the terms of the Consent Judgment. The Clerk is directed to **CLOSE** this case, and all pending motions, if any, are **DENIED AS MOOT**.

**DONE and ORDERED** in Chambers at Miami, Florida this 2nd day of November 2022.

_____
MELISSA DAMIAN
UNITED STATES MAGISTRATE JUDGE